IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC L. GONZALEZ,<br><br>  Plaintiff,<br><br>  vs.<br><br>MICHAEL SEPULVEDA, M.D., et al.,<br><br>  Defendants. | No. C 13-1272 LHK (PR)<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |

Plaintiff, a state prisoner proceeding *pro se*, filed a civil rights complaint under 42 U.S.C. § 1983. On November 25, 2013, defendants filed a motion to dismiss based on, *inter alia*, res judicata, and request for judicial notice. Defendants' request for judicial notice is GRANTED. On December 9, 2013, plaintiff filed his opposition to the motion to dismiss. On December 20, 2013, defendants filed a reply. For the reasons that follow, the court GRANTS defendants' motions to dismiss.

**BACKGROUND**

I.   Current lawsuit

In his complaint, plaintiff alleges that on April 27, 2011, plaintiff was housed at the Correctional Training Facility ("CTF"). Plaintiff's primary care physician ("PCP") diagnosed plaintiff with Post-Traumatic Stress Disorder ("PTSD") and concluded that double-celling plaintiff exacerbated plaintiff's condition. (Compl. at 3.) Thus, plaintiff's PCP submitted a

1  chrono to defendant Dr. Michael Sepulveda, the Chief Medical Officer at CTF, to request that
2  plaintiff receive permanent single-cell housing. (*Id.*)  Despite knowing that plaintiff was
3  suffering from physical and mental ailments, which were exacerbated by his double-cell housing,
4  Dr. Sepulveda denied plaintiff's request for, and PCP recommended, single-cell housing. (*Id.* at
5  4.)

6  As a result of Dr. Sepulveda's denial, plaintiff filed an Americans with Disabilities Act
7  ("ADA") appeal. (*Id.*)  Plaintiff claimed that his mental health conditions were worsening,
8  which caused plaintiff to have asthma attacks and insomnia, because plaintiff was being double-
9  celled. (*Id.* at 5.)  On June 29, 2011, Dr. Bright conducted a consultation regarding plaintiff's
10 ADA appeal. (*Id.* at 4.)  Dr. Bright denied plaintiff's appeal, stating that mental disorders,
11 asthma, and insomnia were not recognized by the California Department of Corrections and
12 Rehabilitation ("CDCR") as disabilities under the ADA. (*Id.* at 4-5.)

13 Plaintiff claims that Dr. Sepulveda was deliberately indifferent to plaintiff's serious
14 medical needs, and Dr. Bright violated the ADA.  Plaintiff requests a permanent injunction of
15 single-cell housing, as well as damages.

16 II.    Previous Lawsuit

17 In a previous action, *Gonzalez v. Zika*, No. 11-5561 CW (N.D. Cal., filed November 17,
18 2011) ("*Gonzalez I*"), plaintiff filed a civil rights complaint, alleging that Dr. Zika, the Chief of
19 Mental Health at CTF, and Dr. Garbarino, plaintiff's case manager and psychologist, were
20 deliberately indifferent to plaintiff's serious medical needs. (Defs.' Req. Jud. Not., Ex. A.
21 ("*Gonzalez I* complaint")).

22 Specifically, plaintiff stated that in 2008, Dr. Katz, plaintiff's case manager diagnosed
23 plaintiff as suffering from serious panic attacks as a result of having been previously attacked by
24 a cellmate. (*Id.* at 4.)  Dr. Katz was part of a 3-member Interdisciplinary Treatment Team
25 ("IDTT") committee who recommended to custody staff that double-cell housing for plaintiff
26 posed a serious threat to plaintiff's condition. (*Id.* at 5.)  Custody staff granted plaintiff single-
27 cell status for 90 days. (*Id.* at 5-6.)  At the completion of the 90 days, Dr. Katz brought plaintiff
28 back before the IDTT committee to recommend extending plaintiff's temporary single-cell status

1  to permanent single-cell status. (*Id.* at 6.) Dr. Zika denied permanent single-cell status, but
2  recommended extending plaintiff's single-cell status for another 90 days, and thereafter to
3  double-cell status as part of a treatment plan called "exposure therapy." (*Id.* at 7.) Plaintiff filed
4  an administrative appeal contesting this recommendation. (*Id.* at 7-8, Ex. A.) As part of the
5  appeal, plaintiff was evaluated by Dr. Hutchinson, who concluded that plaintiff suffered from
6  significant PTSD that would be made worse when placed into a double-cell situation. (*Id.* at 8.)
7  As a result, Dr. Zika rescinded his earlier recommendation of returning plaintiff to double-cell
8  housing, and concluded that exposure therapy was inappropriate. (*Id.*)

9  Plaintiff appeared before the IDTT again in March 2011 to determine whether plaintiff's
10 single-cell housing would continue. (*Id.* at 9.) Plaintiff continued in single-cell housing until
11 April 6, 2011, when he was placed into double-cell housing after Dr. Zika refused to extend
12 single-cell housing for plaintiff any longer. (*Id.* at 11.) However, on April 27, 2011, Dr. Kohler,
13 plaintiff's PCP, concluded that double-cell status posed a real threat to plaintiff and that single-
14 cell status was needed for plaintiff's protection and mental stability. (*Id.*) Despite showing Dr.
15 Zika and Dr. Garbarino the evaluation from plaintiff's PCP, neither Dr. Zika nor Dr. Garbarino
16 would recommend plaintiff's return to single-cell housing. (*Id.* at 13, 19-20.)

17 Plaintiff claimed that he was not able to move back into single-cell housing, and as a
18 result, he suffered from migraines, stress, insomnia, and asthma. Plaintiff sued Dr. Zika and Dr.
19 Garbarino for failing to recommend single-cell housing and were deliberately indifferent to
20 plaintiff's serious medical needs.

21 The court granted defendants' motion for summary judgment. *See Gonzalez I*, No. 11-
22 5561 CW (Doc. No. 66). It concluded that although initially, mental health professionals
23 diagnosed plaintiff with PTSD, their diagnoses changed over time, and in their professional
24 opinion, they determined that plaintiff suffered from panic attacks and depression. *See id.* at 21.
25 Based on the evidence submitted, the court further found that plaintiff had refused a variety of
26 alternative recommended treatments and insisted on single-cell housing even though mental
27 health professionals concluded that the single-cell housing was not necessary or effective. *See*
28 *id.* As a result the court concluded that although plaintiff disagreed with defendants' diagnoses

and recommended treatments, plaintiff had failed to show that defendants' decision to return plaintiff to double-cell status was medically unacceptable or demonstrated deliberate indifference. *See id.*

## DISCUSSION

In defendants' motion to dismiss, they argue that the action is barred by res judicata and collateral estoppel. Defendants also assert that the claim against Dr. Sepulveda in his official capacity should be dismissed, and the ADA claim against Dr. Bright as an individual should be dismissed. Because the court agrees that the case should be dismissed based on res judicata, it does not address the remaining arguments raised by defendants.

I.     Elements of Res Judicata

As stated above, defendants' position is that *Gonzalez I* precludes litigation of the claims plaintiff raises here against Drs. Sepulveda and Bright. In general, "[r]es judicata, or claim preclusion, prohibits lawsuits on any claims that were raised or could have been raised in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (emphasis omitted). In the instant case, defendants contend that the claims raised in this lawsuit are barred because they were raised or could have been raised in *Gonzalez I*.

To determine the preclusive effect of *Gonzalez I* – a federal lawsuit – the court must look to federal law. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 n.10 (9th Cir. 2003) (noting that "'[t]he res judicata effect of federal court judgments is a matter of federal law'"). Under federal law, "[r]es judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011).

   A.     Identity of Claims

To determine the identity of claims, the Ninth Circuit has applied four criteria: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Id.* at 1150 (quoting

*Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982). The fourth criterion is the most important. *Id.*

As the Ninth Circuit has stated, "[i]dentity of claims exists when two suits arise from the same transactional nucleus of facts." *Tahoe-Sierra*, 322 F.3d at 1078 (internal quotation marks omitted). "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *International Union of Operating Engineers-Employers Constr. Industry Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993) (internal quotation marks omitted). "Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Tahoe-Sierra*, 322 F.3d at 1078.

Here, the court finds that the previous lawsuit and the current lawsuit are related to the same transactional nucleus of facts. In both lawsuits, there is a core set of allegations related to: plaintiff's belief that he needed to have single-celled housing to accommodate plaintiff's PTSD; the effect that double-cell housing had on plaintiff's mental health, asthma, and insomnia; and the recommendations plaintiff received from select prison medical staff recommending single-cell housing for plaintiff. And given that both lawsuits involve the same core facts, the two actions could have, and should have, been conveniently tried together.[1]

Plaintiff opposes defendants' motion and argues that he could not have included Drs. Sepulveda and Bright in *Gonzalez I* because plaintiff did not administratively exhaust his claims against Drs. Sepulveda and Bright in the same administrative appeal in which he complained about Drs. Zika and Garbarino. Thus, asserts plaintiff, *Gonzalez I* and the current action are

---

[1] The other three *Costantini* factors also appear to favor an identity of claims. The first factor supports a finding of res judicata because the liability of Drs. Zika and Garbarino could be called into question by the instant action. The second factor supports a finding of res judicata because substantially the same evidence would appear to be presented in both actions. Plaintiff's argument in his previous case was supported by documents showing why plaintiff was entitled to single-cell housing. Presumably, plaintiff would file the same or similar documents in the underlying action. The third factor also supports a finding of res judicata because the two suits involve infringement of the same right: plaintiff's right to be in single-cell housing.

1  "unrelated" lawsuits. Plaintiff also argues that he did not exhaust his administrative appeal
2  against Drs. Sepulveda and Bright until January 2012 and thus, plaintiff could not have included
3  Drs. Sepulveda and Bright as defendants in *Gonzalez I*, which plaintiff filed on November 17,
4  2011.

5  "Newly articulated claims based on the same nucleus of facts may still be subject to a res
6  judicata finding if the claims *could have been brought* in the earlier action." *Tahoe-Sierra*, 322
7  F.3d at 1078 (emphasis added). Plaintiff asserts that he could not have brought the claims
8  against Drs. Sepulveda and Bright in the earlier action because he was still in the process of
9  exhausting his administrative appeal against them. However, the record demonstrates that
10 plaintiff not only could have raised his claims against Drs. Sepulveda and Bright in his previous
11 lawsuit, but also plaintiff actually discussed facts surrounding both of them in *Gonzalez I*.
12 (*Gonzalez I*, Doc. No. 66 (Order on Summary Judgment Motion) at 19; Doc. No. 50 (Reply
13 Supp. Pl's. Cross-Mot. Summ. J) at 16.) By the time plaintiff filed *Gonzalez I*, the plaintiff was
14 aware of the facts which form the bases of plaintiff's underlying claims against Drs. Sepulveda
15 and Bright. *See, e.g.*, *Fleming v. Travenol Laboratories, Inc.*, 707 F.2d 829, 834 (5th Cir. 1983)
16 (claim preclusion applies where factual basis for Title VII claim is same as factual basis for §
17 1983 claim raised earlier; even though legal theory is different, same wrong is sought to be
18 vindicated in each instance and plaintiff could have amended prior action to include Title VII
19 claim). Moreover, that plaintiff is suing Dr. Bright under a new legal theory, i.e., an ADA
20 violation rather than a deliberate indifference claim, makes no difference. *See McClain v.*
21 *Apodaca*, 793 F.2d 1031, 1033-34 (9th Cir. 1986). Thus, the court concludes that, because the
22 instant claims are such that they were or could have been raised in the previous lawsuit, they
23 satisfy the "identity of claims" factor.

24      B.      <u>Final Judgment on the Merits</u>

25  *Gonzalez I* clearly reached a final judgment on the merits. It resulted in an order granting
26 summary judgment to defendants. Although *Gonzalez I* is currently pending appeal in the Ninth
27 Circuit, for purposes of res judicata, *Gonzalez I* has resulted in a final judgment. *See Tripati v.*
28 *Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) (per curiam) ("The established rule in the federal

1  courts is that a final judgment retains all of its res judicata consequences pending decision of the
2  appeal. . . ."); *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1439 (9th Cir. 1985) ("The federal rule
3  on the preclusive effect of a judgment from which an appeal has been taken is that the pendency
4  of an appeal does not suspend the operation of an otherwise final judgment for purposes of res
5  judicata."). Accordingly, the previous lawsuit resulted in a final judgment on the merits.

      C.        Privity

Finally, the previous lawsuit and the current lawsuit involve parties in privity with each other. The Ninth Circuit has defined privity in the res judicata context as "a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'" *In re Schimmels*, 127 F.3d 875, 8881 (9th Cir. 1997) (quoting *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir. 1977)). Privity exists if there is sufficient commonality of interests between the parties. *Tahoe-Sierra*, 322 F.3d at 1081.

Here, plaintiff is undisputedly the complainant in both actions. In *Gonzalez I*, plaintiff named as defendants Dr. Zika, the Chief of Mental Health, and Dr. Garbarino, a staff psychologist. In the current lawsuit, plaintiff names as defendants Dr. Sepulveda, the Chief Medical Officer, and Dr. Bright, a staff doctor. All four individuals were employed by the same governmental agency – the CDCR's CTF – at the time of the challenged events. Moreover, in both lawsuits, the defendants all denied plaintiff's requests for single-cell housing based on the same evidence that was presented in *Gonzalez I*. Thus, the defendants in both suits share a sufficient commonality of interests to make them privies. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam) (finding privity between the parties in a case barred by res judicata and stating "[d]ifferent individuals are named defendants in the two suits, but all are employees of the FCC"); *Cobb v. Juarez*, Nos. 13-55394, 13-55478, 2014 WL 3747304, at *1 (9th Cir. July 31, 2014) (unpublished memorandum disposition) (affirming dismissal of federal civil rights action on res judicata grounds and finding privity between defendants in first action with defendants in second action even though defendants in second action were not named in the first, but all were employees of the University of California at San Diego's police department);

Order Granting Defendants' Motions to Dismiss
P:\PRO-SE\LHK\CR.13\Gonzalez272mtdres.wpd        7

1  *Conway v. Geithner*, No. 12-0264 CW, 2012 WL 1657156, at *3 (N.D. Cal. May 10, 2012)
2  (finding privity between defendant in first action, who was employed by the Department of
3  Veteran Affairs, and defendant in second action, who was employed by the Internal Revenue
4  Service, because they were both employed by the same federal agency, i.e., the Department of
5  Treasury); *see also Airframe Systems, Inc. v. Raytheon Co.*, 601 F.3d 9, 17 (1st Cir. 2010) ("We,
6  along with other circuits, have long held that claim preclusion applies if the new defendant is
7  "closely related to a defendant from the original action – who was not named in the previous law
8  suit," not merely when the two defendants are in privity."); 18A C. Wright, A. Miller & E.
9  Cooper, Federal Practice and Procedure § 4464.1, at 720 n.6 (2d ed. 2002) (collecting cases in
10 which new defendants successfully asserted nonmutual claim preclusion).

Accordingly, defendants' motion to dismiss based on res judicata is GRANTED.

## CONCLUSION

Because each of the elements of res judicata has been satisfied, the court concludes that the claims asserted in the current action are barred. Defendants' motion to dismiss is GRANTED. The Clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED: 8/14/14

*Lucy H. Koh*
LUCY H. KOH
United States District Judge